**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kimberly L. Johnson, | No. CV-13-08055-PCT-NVW |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W. Colvin, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Johnson seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.   BACKGROUND**

   **A.   Factual Background**

Johnson was born in December 1965. She has a seventh grade education and is able to communicate in English. She has worked as an assistant delivery food manager, cashier/gas station attendant, merchandiser, phone order taker, and taxi cab dispatcher. Her medical problems include diabetes, peripheral neuropathy, knee pain/derangement, lumbar stenosis, carpal tunnel syndrome, and depression.

### B. Procedural History

Johnson applied for disability insurance benefits on December 6, 2008, and for supplemental security income on November 30, 2008, alleging disability beginning January 10, 2008, in both applications. Johnson amended her onset date to November 18, 2008. On August 9, 2011, she appeared with her attorney and testified at a hearing before the ALJ. A vocational expert also testified.

On December 30, 2011, the ALJ issued a decision that Johnson was not disabled within the meaning of the Social Security Act. The Appeals Council denied Johnson's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision. On March 19, 2013, Johnson sought review by this Court.

## II. STANDARD OF REVIEW

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

### III. FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Johnson meets the insured status requirements of the Social Security Act through March 31, 2012, and that she has not engaged in substantial gainful activity since January 10, 2008. At step two, the ALJ found that Johnson has the following severe impairments: diabetes, arthritis of the knees bilaterally, neuropathy of the lower extremities, and chronic pain syndrome. At step three, the ALJ

determined that Johnson does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404.

At step four, the ALJ found that Johnson:

> has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the capacity to lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk at least two hours in an eight hour workday and sit about six hours in an eight hour workday. The claimant can occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds, and occasionally balance, kneel, crouch, or crawl, and frequently stoop. The claimant can frequently use her right dominant wrist for fine and gross manipulation. The claimant is able to perform simple unskilled rote routine work due [to] her pain, other symptoms, and the adverse side effects from medications that moderately impact her concentration, persistence, and pace.

The ALJ further found that Johnson is unable to perform any of her past relevant work. At step five, the ALJ concluded that, considering Johnson's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Johnson could perform.

## IV. ANALYSIS

### A. The ALJ Did Not Err in Weighing Medical Source Evidence.

First, Johnson contends that the ALJ improperly disregarded an August 2011 treatment note by treating neurologist M. Nayer, M.D., which indicated "limited sitting and a need to have the legs elevated due to the neuropathy." The ALJ stated:

> On August 2, 2011, records from Tri State Neurology indicate the claimant was limited in sitting and required elevation of her legs for her neuropathic pain []. This report primarily summarizes the claimant's subjective complaints and

- 4 -

>diagnoses but does not present objective clinical or laboratory diagnostic findings that support its conclusions. Accordingly, the undersigned gives little evidentiary weight to this opinion which, if otherwise accepted as credible, would indicate that the claimant could not perform any kind of work.

The progress notes, dated August 2, 2011, were written by Temple Gupta, physician's assistant, and state:

> *History of Present Illness*
> Neurology fu:
> 45-year-old female falling for neuropathy and going symptoms of carpal tunnel in her right hand continues to describe burning sensation in the aspect of her right palm. She denies any significantly worsening neck pain but continues to describe her feet feel numb and she is limited in walking distance elevating her leg seems to help and she uses a cane at time to support her gait she has had no recent reported falls she denies any myelopathic symptoms she continue gabapentin with some relief.
>
> . . . .
> *Treatment*
> **1. Idiopathic progressive polyneuropathy**
> Patient is limited in sitting and requires elevation of her legs for her neuropathic pain. Continue same medications.

The statement that Johnson "is limited in sitting and requires elevation of her legs" plainly is based on statements Johnson made, which included "elevating her leg seems to help," and is not based on a physical examination or clinical testing. The ALJ did not err in interpreting the treatment recommendation as based solely on the patient's subjective report.

Second, Johnson points out that the ALJ referred to the April 2009 functional assessment as having been completed by Don Erwin, M.D., when it appears to be signed by Dr. Nayer. The ALJ assigned "some weight" to this opinion to the extent that it shows a residual functional capacity of less than light work to less than sedentary work, but

rejected environmental and manipulation limitations. Harmless error principles apply in the Social Security Act context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination. *Id.* The claimant usually bears the burden of showing that an error is harmful. *Id.* at 1111. Incorrectly identifying the source of the April 2009 functional assessment does not affect the nondisability determination and therefore is harmless.

Third, Johnson contends that the ALJ erred by giving greater weight to the September 2009 opinion of state medical consultant Ernest Griffith, M.D., than to the April 2009 assessment by treating neurologist M. Nayer, M.D. and the August 2011 treatment note. In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight should be given to the opinion of a treating physician than to the opinions of non-treating physicians. *Id.* Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Id.* Factors that an ALJ may consider when evaluating any medical opinion include "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion." *Orn*, 495 F.3d at 631.

The ALJ stated the residual functional capacity assessment is based, in large part, on Dr. Griffith's September 10, 2009 assessment. He stated that he gave the assessment

- 6 -

"great weight" because it was based upon a thorough review of the evidence and familiarity with Social Security Rules and Regulations, is well-supported by the medical evidence, is not inconsistent with other substantial evidence, and supports a less than sedentary work restriction. The ALJ specifically explained, "Dr. Griffith noted that with a combination of the claimant's lower extremity changes associated with diabetes mellitus neuropathy and right knee impairment likely to continue post surgery, a sedentary residual functional capacity appears indicated."

As found above, the ALJ did not err by assigning "little evidentiary weight" to the physician assistant's August 2011 treatment note that stated Johnson "is limited in sitting and requires elevation of her legs." The ALJ gave "some weight" to Dr. Nayer's April 2009 functional assessment in which he opined that Johnson can sit for 4 hours at one time, stand for 4 hours at one time, sit for a total of 4 hours in an 8-hour work day, stand for a total of 4 hours in an 8-hour work day, continuously lift and carry up to 10 pounds, frequently lift and carry 11-20 pounds, occasionally lift and carry 21-50 pounds, use both hands for continuous grasping and pushing/pulling of controls, but not perform fine manipulation with either hand or use feet for repetitive movements. Dr. Nayer assessed a need for mild environmental limitations. Dr. Nayer crossed out the section asking how pain or fatigue affects claimant's ability to function. The ALJ found the April 2009 assessment not supported by the record that shows Johnson has restricted ability to stand and walk—more restricted than Dr. Nayer opined—but does not show a need for environmental limitations or limitations for lifting and manipulative activities.

Johnson contends that the ALJ erred by giving Dr. Griffith's opinion greater weight than Dr. Nayer's opinion, but Dr. Griffith opined that Johnson can stand or walk for a total of 2 hours in an 8-hour workday whereas Dr. Nayer opined she can stand 4 hours. Dr. Griffith opined she can frequently lift and carry up to 10 pounds whereas Dr. Nayer opined she can frequently lift and carry up to 20 pounds. Dr. Griffith opined

- 7 -

Johnson can occasionally kneel, crouch, and crawl, but Dr. Nayer opined she can frequently squat and crawl. The only limitations that Dr. Nayer found that Dr. Griffith did not are manipulative and environmental, and the ALJ explained those restrictions are not supported by the record.

Johnson also contends the ALJ should have given Dr. Griffith's opinion less weight because he did not have the medical records from September 2009 through August 2011. But Johnson did not submit an assessment from Dr. Nayer after April 2009—only his physician's assistant's treatment note recommending that Johnson elevate her legs.

Therefore, to the extent that the ALJ did not fully incorporate treating neurologist Dr. Nayer's opinions in the residual functional capacity, she either imposed greater restrictions or articulated specific, legitimate, clear, and convincing reasons for rejecting some of Dr. Nayer's opinions.

### B.  The ALJ Did Not Err by Misinterpreting Medical Records.

Johnson contends that the ALJ erred by misinterpreting two pieces of Johnson's medical record. Johnson argues that the ALJ rejected her need to elevate her legs and disregarded lumbar spine issues without explicitly considering two NCV (nerve conduction velocity) test results. Johnson cites the report of a December 23, 2008 test that states, "The above electrodiagnostic study reveals no evidence of lumbar radiculopathy and peripheral neuropathy." Johnson misstates the test as showing evidence of lumbar radiculopathy and peripheral neuropathy, not the absence of those conditions. Further, the ALJ explicitly referred to the December 23, 2008 test (Exhibit 6F/7, but also included as Exhibit 25F/15).

Johnson also cites the report of a November 4, 2010 test that states, "The above electrodiagnostic study reveals evidence of peripheral neuropathy of in [*sic*] bilateral

lower extremities." The ALJ found neuropathy of the lower extremities among Johnson's serious impairments. The test did not show lumbar radiculopathy.

Therefore, the ALJ did not err by misinterpreting medical records.

IT IS THEREFORE ORDERED that the final decision of the Commissioner of Social Security is affirmed. The Clerk shall enter judgment accordingly and shall terminate this case.

Dated this 17th day of January, 2014.

_____
Neil V. Wake
United States District Judge

- 9 -